No. 3824.

Court of Appeal, Parish of Orleans.

## S. LOCKE BREAUX vs. J. EDWARD CRUSEL.

Plaintiff sued defendant for a ballance due on accounting for a consignment of rice made to him by defendant. The latter contended that the shipment was made on the basis of a fixed price guaranteed to him by plaintiff and that a reformation of the account on the basis of this alleged guarantee shows a balance in his favor which he claimed in reconvention.

Held: That it is conclusively established that no such guarantee formed the subject of contract between the parties; that the rice sold by plaintiff, on a sample furnished by defendant, and at a figure equaling the alleged guaranteed price; that the rice when received sampled below the grade of the original sample; that it was rejected by the purchaser and was finally sold by plaintiff to the possible advantage for defendant's account.

Appeal from Civil District Court, Division "A."

Cage, Baldwin & Crabites, for Plaintiff and Appellee.

T. M. and J. D. Miller, for Defendant and Appellant.

MOORE, J. Between the 28th day of August, 1904, and the 20th day of the following month defendant shipped to the plaintiff, who is a commission merchant in the City of New Orleans, 2165 bags, equivalent to 2130 75/100 barrels, of rough rice which the latter sold for account of defendant, realizing therefor the sum of Thirty-nine Hundred and Twenty-two 43/100 Dollars.

Prior to, and in anticipation of these shipments, plaintiff had honored defendants sight draft for $4299.36/100. Debiting defendant's account with the amount of the draft, plus a debit balance of interest calculated up to the close of the account on the 19th day of September, 1904, of $15.18/100 and crediting the account with the proceeds of sale, plus certain changes of brokerage commissions, etc., remitted, amounting to $61.06/100 plaintiff's account shows a balance due by defendant of $331.00, for which amount he is sued by plaintiff. Defendant's answer admits drawing the draft; its payment by plaintiff and the shipment of the rice, but avers that the defendant was or induced to

173

draw said draft and to purchase and ship to plaintiff the said rice only upon plaintiff's representing to him that said rice had been sold by plaintiff at and for the price of $2.60 per barrel; that he had furnished plaintiff samples of the said rice and plaintiff admitted to him that the aforsesaid sale had been made upon the samples so furnished him; that he thereupon purchased said rice from the former owner thereof and shipped same to plaintiff at great trouble and expense; that after defendant had caused said rice to be loaded upon cars and consigned to plaintiff, the latter negligently failed to use due diligence in securing prompt delivery of all said rice to him and the market price of rice having fallen, plaintiff failed and refused to make settlement with defendant at the rate of $2.60/100 per barrel, as previously agreed upon."

Assuming the character of plaintiff in reconvention he prays for judgment against plaintiff in the sum of $1069.65/100, the difference between the price for which plaintiff had sold the rice and that at which defendant avers was the price agreed on and was the condition of the shipment.

There was judgment in favor of the plaintiff as prayed for and defendant appeals.

The facts are that some time in the month of August, 1904, plaintiff, who was then on a visit to Beaumont in the State of Texas, was advised by Duncan P. Allen, the representative of defendant, that his principal had an option of purchase of some 2000 sacks of rough rice at Rosedale at $1.85/100 per barrel, and the plaintiff was consulted as to the advisability of defendant making the purchase and shipping same to New Orleans for sale. Plaintiff stated to Allen, who was the son of plaintiff's broker, that if defendant desired to make the purchase of the rice and would ship it to him, plaintiff, on consignment, he, plaintiff, would extend to defendant the financial accomodation necessary to undertake the venture, and would do this on a basis of eight per cent running interest, adding, that if the venture should prove unprofitable, plaintiff, and his broker, Duncan Allen's father, would waive all commissions and brokerage. The understanding was that defendant was to obtain samples of the goods and forward them to plaintiff in the City of New Orleans who would then advise him as to the price for which the

rice could be sold. Some short while after this arrangement defendant forwarded samples of rice to plaintiff. The samples were turned over to Mr. Columbus H. Allen, plaintiff's broker who made characteristic slips of it, grading it at $2.60/100. The rice was then offered by plaintiff to the National Rice Milling Company, and a sale, as per sample, was closed with that Company for 2200 sacks at $2.60/100. Defendant was then notified of the sale and he thereupon purchased the rice at Rosedale, Texas, and shipped same to plaintiff. On the arrival in New Orleans of three car loads of the rice it was sampled by the Milling Company in order to ascertain whether it answered the grade indicated by the original samples exhibited, and it was then discovered that the shipment fell far below the grade of the sample which was made the basis of sale. The Milling Company rejected the rice and it was subsequently sold to them at a lower figure, but at a figure higher than could have been obtained in open market; the proof being that as a mere concession to the plaintiff a price beyond its real market value was allowed for it, the price paid being $2.40/100. The remaining car loads, when they arrived, were also found to be below the grade of the samples sent. These were so stack burnt that the Milling Company would not accept them at all. Plaintiff, therefore, in order to save loss to defendant, had this lot milled. The settlement with the Milling Company of the lot accepted by it at $2.40/100, as well as the sale of the milled rice were duly reported to defendant, who never contended or intended, until months afterwards when pressed for a settlement of the balance due by him, that plaintiff was bound to him at the rate of $2.60/100 per barrel irrespective of whatever price plaintiff may have obtained for the goods. Defendant's representative was present in the City of New Orleans pending the adjustment with the Milling Company, and also when one car of rice was sent to be milled and he, and also his principal was fully advised at the time that all trouble arose, because it established beyond all dispute that the rice shipped was far below the grade of the sample sent and on the faith of which the sale had been made.

It is conclusively established that plaintiff was simply acting

as a commission merchant, that he guaranteed no price except the price based upon the sample sent, which the goods, when they arrived, did not come up to; that he was acting solely for the interest of the shipper and that he faithfully executed his trust.

The defense is absolutely without merit, therefore, the Judgment appealed from is affirmed.

DUFOUR-J-recused.